**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CRISTOBAL ACOSTA, | Case No. 18-cv-00958-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CALIFORNIA HIGHWAY PATROL, et al., | |
| Defendants. | [Re: ECF 45] |

As Mr. Cristobal Acosta sat in his car stopped at the side of the road with a mechanical breakdown that caused "backfiring," two California Highway Patrol ("CHP") officers responded to an on-duty sergeant's report of an explosion from the car or possible "shots fired," and approached Acosta's stopped car from behind in their respective patrol vehicles. After hearing a loud sound coming from Plaintiff's car that was actually a backfire, one officer exclaimed "Shots fired!" and "Back up." After hearing a second loud sound from Plaintiff's car seconds later, both officers opened fire, believing that the loud sounds coming from Plaintiff's car were gunfire. One of the bullets struck Plaintiff, who was in fact not armed and had committed no crime.

Arising from this incident, Plaintiff Acosta brings suit against the CHP, Sergeant Daniel Hill ("Sergeant Hill"), Officer David Morasco, Jr. ("Officer Morasco"), and Officer Jonas Bleisch ("Officer Bleisch") (collectively, "Defendants"). Plaintiff claims that Officers Morasco and Bleisch violated his civil rights secured by the Fourth Amendment and 42 U.S.C. § 1983. Plaintiff also claims that the incident was the result of Defendants' negligence and that the CHP and Officers Morasco and Bleisch are liable under three additional state law claims. Defendants seek summary judgment on all claims, including dismissal of Plaintiff's federal claim under qualified immunity. *See* Motion, ECF 45. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. STATEMENT OF FACTS[1]

### A. Events Leading up to the Officers' Arrival on the Scene

On the night of January 8, 2017, Plaintiff was driving a black Volkswagen Jetta in San Jose, CA. *See* Acosta Depo. at 45:11–14, Ex. 9 to Motion, ECF 45-1; Photographs of Acosta's Vehicle, Ex. 2 to Booth Decl., ECF 51-1. Plaintiff's vehicle was experiencing mechanical issues, described by Plaintiff as "explo[sions]" that caused the engine to "turn[] off by itself." *See* Acosta Depo. at 45:1–4. Plaintiff initially pulled over near a Walgreens but was able to successfully restart his vehicle and continue driving. *See id.* at 45:5–10. Plaintiff proceeded to drive down McKee Road toward U.S. Highway 101 ("US-101") and entered US-101 heading north. *See id.* at 45:11–16. After a few miles Plaintiff's vehicle made another "explosion" sound and Plaintiff pulled over and stopped on the shoulder of the connector ramp between northbound US-101 and northbound Interstate 880 ("I-880"). *See* Statement of Cristobal Acosta, pg. 10–11 of District Attorney Report, Ex. 10 to Motion, ECF 45-1.

Meanwhile, Sergeant Hill was on duty in the San Jose area. *See* Hill Decl. ¶ 2, Ex. 2 to Motion, ECF 45-1. Officer Morasco was also working that night, January 8, 2017. *See* Morasco Decl. ¶ 2, ECF 46-5. Sometime after 11:00 p.m., Officer Morasco "was assisting with traffic control around an [unrelated] accident scene near the interchange between [US-]101 and [I-]880 in San Jose." *Id.* Officer Bleisch was likewise working that night and assisting with traffic control around the unrelated accident. *See* Bleisch Decl. ¶ 2, ECF 46-3.

At approximately 11:30 p.m., Sergeant Hill was standing outside of his patrol vehicle on a connector ramp (between northbound I-880 and northbound US-101) adjacent to the ramp where Plaintiff would ultimately stop, assisting a tow driver with a vehicle involved in the unrelated traffic collision. *See* Hill Decl. ¶ 2. Sergeant Hill then "heard a loud bang sound" coming from the northbound US-101 to northbound I-880 ramp behind him. *See id.* Sergeant Hill walked over to the cement wall separating the two ramps and saw a black sedan, later identified as Plaintiff's Volkswagen, stopped on the right shoulder of the northbound US-101 to northbound I-880 ramp,

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

approximately 100 yards from Hill's location. *See id.* ¶¶ 2–3. From this vantage point, Sergeant Hill "saw a flash coming from Mr. Acosta's vehicle, which appeared consistent with a firearm muzzle flash or some type of explosion, and [] heard a loud bang sound that was similar to that of a gun." *Id.* ¶ 3.

Next, Sergeant Hill contacted the Golden Gate Communications Center dispatch ("Dispatch") to report his observations. Defendants have submitted an audio recording of the dispatch clip, *see* Ex. 3 (lodged manually) to Motion, ECF 45-1, as well as a transcript of the first two minutes (the relevant portion) of the clip, *see* Dispatch Transcript, Ex. 3-A to Fong Decl., ECF 55. Sergeant Hill reported to Dispatch that "[i]t looks like somebody TC'd [traffic collision/crashed] northbound 101 to northbound 880. Uh, there's something on the right shoulder." *See* Dispatch Transcript at 2:6–8. Officer Morasco, who was listening to the dispatch call, responded, "I'm in the area. I can turn around." *See id.* at 2:15–16. Sergeant Hill immediately added that "I'm not sure what happened, but **something just exploded from that car or it could've been shots fired**. I'm not sure." *See id.* at 2:18–20 (emphasis added).

Dispatch then repeated back, "[p]ossibly shots fired." *See* Dispatch Transcript at 2:21. Dispatch also activated a "clearance tone," *see id.* at 2:21–25, which advises other CHP officers to stay off the radio unless it is an emergency, *see* Morasco Decl. ¶ 2. A few moments later, Officer Morasco confirmed that he was "[o]n [his] way" to investigate Sergeant Hill's report of an explosion or possible shots fired from the yet-to-be-identified vehicle (Plaintiff's vehicle). *See* Dispatch Transcript at 3:5–9.

As these events unfolded, Officer Bleisch was listening to the dispatch broadcast and "heard Officer Morasco respond to Sergeant Hill over the radio." *See* Bleisch Decl. ¶ 3. Officer Bleisch testifies that "Officer Morasco then passed my patrol vehicle in his patrol vehicle, headed toward the stopped car." *Id.* After a few moments, Officer Bleisch "followed Officer Morasco to assist." *Id.* Both officers had activated the overhead blue and red flashing lights on their vehicles as they approached the stopped car, automatically triggering the dash camera system (Mobile Video Audio Recording System or "MVARS") installed on each patrol vehicle. *See* Bleisch Decl. ¶ 3; Morasco Decl. ¶ 3.

**B.    The Officers' Arrival on the Scene and Subsequent Events**

As Officer Morasco and Officer Bleisch approached in their patrol vehicles, Plaintiff's vehicle was stopped on the right hand shoulder of the connector ramp between northbound US-101 and northbound I-880.  *See* Bleisch Decl. ¶ 3.  The officers' arrival on the scene and subsequent events were captured by the MVARS on each of the officers' two patrol vehicles.

Defendants submitted the MVARS video recording from Officer Morasco's patrol vehicle, *see* Ex. 7 (lodged manually) to Motion, ECF 45-1, as well as a transcript, *see* Morasco MVARS Transcript, Ex. 7-A to Fong Decl., ECF 55.  The Morasco MVARS video is approximately fourteen minutes in length.  The first 90 seconds are of primary importance to the instant motion.  In parallel, Plaintiff submitted the MVARS video recording from Officer Bleisch's patrol vehicle, *see* Ex. 1 (lodged manually) to Booth Decl., ECF 51-1, and an accompanying transcript, *see* Bleisch MVARS Transcript, Ex. 1-A to Booth Decl., ECF 56.  The Bleisch MVARS video is approximately eleven and a half minutes in length.  The first 125 seconds overlaps the 90-second time period from the Morasco MVARS video that is of primary importance to the instant motion.

Officer Morasco was the first to approach Plaintiff's vehicle.  The Morasco MVARS video shows Officer Morasco traveling northbound on I-880 and taking the US-101 north exit (exit 4C).  Morasco MVARS Video at 00:00–00:22.  Officer Morasco then went off-road, turning left and driving across a grassy area to reach the connector ramp between northbound US-101 and northbound I-880 where Plaintiff's vehicle was stopped.  *See id.* at 00:22–00:34.  Officer Morasco activated his lights as he entered the grassy area.  *See id.*  Officer Morasco reached the connector ramp (on which Plaintiff's vehicle was stopped farther down) at approximately the 00:34 mark, and Plaintiff's vehicle became visible a few seconds later, as Officer Morasco continued to drive along the ramp.  *See id.* at 00:34–0:39.  The video shows Plaintiff's vehicle stopped on the right shoulder of the ramp and two lights on the rear of Plaintiff's vehicle visibly blinking.  *See id.* at 0:39–0:44.  Officer Morasco came to a stop approximately 30 feet behind Plaintiff's vehicle.  *See id.*  Plaintiff cannot be seen or heard on the video at this point in time.  *See id.*  Plaintiff's vehicle had a tinted rear window.  *See* Morasco Decl. ¶ 3; Photographs of Acosta's Vehicle, Ex. 2 to Booth Decl., ECF 51-1.

Officer Bleisch was the second to approach Plaintiff's vehicle. The Bleisch MVARS video shows Officer Bleisch initially parked on the shoulder of the exit (exit 4C) from I-880 north to US-101 north. *See* Bleisch MVARS Video at 00:00–00:51. The video then shows Officer Morasco driving past Officer Bleisch, at which point Officer Bleisch begins following Officer Morasco. *See id.* at 00:51–01:04. Officer Bleisch activated his lights at approximately the 01:04 mark, shortly before turning left to enter the grassy area between the two ramps. *See id.* at 01:04– 01:13. Officer Bleisch reached the connector ramp (on which Plaintiff's vehicle was stopped farther down) at approximately the 01:27 mark, at which point Officer Morasco's patrol vehicle is visible farther down the ramp. *See id.* at 01:13–01:27. As Officer Bleisch approaches (on the left side of Officer Morasco's patrol vehicle), Officer Morasco is visible outside of his vehicle, behind his open driver-side door. *See id.* at 01:27–01:34. At the 01:34 mark, Officer Bleisch's vehicle is still moving and Plaintiff's vehicle is only partially visible. *See id.*

Turning back to the Morasco MVARS video, Officer Morasco's vehicle is stationary behind Plaintiff's vehicle at this point in time. *See* Morasco MVARS Video at 00:44–00:53. At approximately the 00:53–00:54 mark, a loud sound emanates from Plaintiff's vehicle, followed immediately by a clearly visible puff of smoke. *See id.* at 00:53–00:54. This same sound and puff of smoke is captured on the Bleisch MVARS video at approximately the 01:35–01:36 mark. *See* Bleisch MVARS video at 01:35–01:36.

Upon hearing the loud sound at the 00:53–00:54 mark, Officer Morasco exclaimed, "Shit! Shots fired! Shots fired, shots fired, shots fired? 89Boy shots fired!" *See* Morasco MVARS Transcript at 2:7–9; *see also* Morasco MVARS Video at 00:54–00:59. Officer Morasco's "shots fired" language is also audible on the Bleisch MVARS video. *See* Bleisch MVARS Video at 01:37–01:40; Bleisch MVARS Transcript at 3:12–14. Dispatch then repeated back "Shots fired." *See* Morasco MVARS Transcript at 2:10; *see also* Morasco MVARS Video at 00:59– 01:00. A few seconds later, Officer Morasco said, "Back up. Back up. Back up. Back up." *See* Morasco MVARS Transcript at 2:11–12; *see also* Morasco MVARS Video at 01:01–01:04.

At this instant—the 01:04–01:05 mark of the Morasco MVARS video—a second loud sound and puff of smoke emanated from Plaintiff's vehicle. *See* Morasco MVARS Video at

01:04–01:05; *see also* Bleisch MVARS video at 01:45–01:46. Moments later, Officer Morasco opened fire on Plaintiff's vehicle, emptying a full magazine[2] of rounds. *See* Morasco MVARS Video at 01:06–01:15; Morasco Decl. ¶ 12. Simultaneously, Officer Bleisch backed up his patrol vehicle a few feet and then opened fire on Plaintiff's vehicle, also emptying a full magazine of rounds. *See* Bleisch MVARS video at 01:47–01:57; Bleisch Decl. ¶ 9.

No additional shots were fired. A few seconds later, Officer Bleisch yelled in the direction of Plaintiff, "Put your hands up. Let me see your f****** hands." *See* Bleisch MVARS Transcript at 3:25–4:1; *see also* Bleisch MVARS Video at 2:04–2:07. One of the officers also said, "Drop the gun. Put your hands up." *See* Morasco MVARS Transcript at 2:19–20. However, there is no evidence that Plaintiff actually possessed a gun during the encounter, nor do Defendants so argue in the instant motion. Instead, the loud sounds and puffs of smoke coming from Plaintiff's vehicle were actually caused by the vehicle "backfiring," although the officers state they did not know so at the time. *See* Morasco Decl. ¶ 11; Bleisch Decl. ¶ 10.

After a period of time during which the officers continued to give instructions, Plaintiff exited his vehicle and positioned himself face down on the ground. *See* Morasco MVARS Video at 1:16–6:32. A few minutes later, Plaintiff rose from the ground, walked backwards from his vehicle in the direction of Officer Morasco's patrol vehicle, and was detained by other officers who had subsequently arrived on the scene. *See* Morasco Decl. ¶ 14; Bleisch Decl. ¶ 11; *see also* Morasco MVARS Video at 7:09–8:40.

After the scene was "stabilized," Sergeant Hill "requested emergency medical [personnel] to immediately respond to the scene to provide treatment to Mr. Acosta." *See* Hill Decl. ¶ 9. Sergeant Hill notes that "[i]t appeared that Mr. Acosta received a grazing gunshot wound to his head as a result of the incident." *Id.* Indeed, Plaintiff had been struck by one of the bullets fired by Officer Morasco and Officer Bleisch. *See* Photo of Acosta Head Wound, Ex. 11 to Motion, ECF 45-1; *see also* Opp'n at 5, ECF 51 (stating that "only one of the bullets struck Mr. Acosta"). Plaintiff received emergency medical aid at the scene and was then transported to the Santa Clara

---

[2] Each magazine contained 12 bullets. *See* Motion at 6.

County Regional Medical Center.  *See* Hill Decl. ¶ 9.  Around this time, the San Jose Police Department ("SJPD") began an investigation into the incident.  *See* Hill Decl. ¶ 10; SJPD Report at 50, Ex. 8 to Motion, ECF 45-1.

Plaintiff "sustained a 1.5cm laceration to the back of [his] head" which was considered "non life threatening."  *See* SJPD Report at 50.  Plaintiff was released from the medical center at 2:43 a.m. on January 9, 2017, after which the SJPD transported Plaintiff to their office for an interview.  *See* SJPD Report at 50–51.  Later that morning, an SJPD officer drove Plaintiff to an address of Plaintiff's request in Union City, CA.

The District Attorney for the County of Santa Clara provided a Report on the Non-Fatal Shooting of Cristobal Acosta ("District Attorney Report").  *See* District Attorney Report, Ex. 10 to Motion, ECF 45-1.  In evaluating the officers' potential criminal liability, the District Attorney Report considered "various narrative reports, documenting interviews of the involved officers and civilian witnesses, audio recordings of those interviews, and crime scene details."  *See* District Attorney Report at 3.  The report concluded that under the totality of the circumstances "Officers Morasco and Bleisch reasonably and actually believed that the driver of the stopped car, Cristobal Acosta, posed a threat of imminent death or great bodily injury, either to the officers or others," and that both officers "were justified in their use of force in response to an immediate threat of great bodily injury or death."  *See id.* at 23.  Thus, the District Attorney found that the officers' conduct "is legally justifiable and no criminal liability attaches."  *See id.*

**C.      Statements regarding whether the Backfires sounded like Gunshots**

As previously discussed, Sergeant Hill heard some of the "backfires" from Plaintiff's vehicle live and contemporaneously reported that "I'm not sure what happened, but **something just exploded from that car or it could've been shots fired**.  I'm not sure."  *See* Dispatch Transcript at 2:18–20 (emphasis added).  Officer Morasco, who was approximately 30 feet behind Plaintiff's vehicle when another backfire occurred (the first "loud sound" in the Morasco MVARS video) contemporaneously reported, "Shots fired!  Shots fired, shots fired . . . 89Boy shots fired!"  *See* Morasco MVARS Transcript at 2:7–9.

Officer Bleisch, for his part, submits testimony that he "heard the sound of a gunshot from

the vicinity of Mr. Acosta's vehicle" and that "[a] few seconds later, I heard a second shot from the vehicle." *See* Bleisch Decl. ¶¶ 7–9. And Plaintiff acknowledges that he told policeman who were interviewing him on January 9, 2017, "[my] car backfiring sounded like gunshots." *See* Acosta Depo. at 47:6–9. When asked why he said that, Plaintiff explained that "[t]he first thing that came to my mind, maybe a gunshot. That's the first thing that came to my mind." *See id.* at 47:10–13.

In addition, one civilian nearby the scene described hearing a "loud pop" and then "what she thought was a gunshot." *See* Statement of Sammanika Martica, pg. 11–12 of District Attorney Report, Ex. 10 to Motion, ECF 45-1. This civilian "ran" after the "second one [that] sounded like a gunshot." *See id.* On the other hand, a separate civilian witness (Alberto Gonzalez-Pinales), who had a clear visual of the highway and the involved vehicles, heard a "loud bang" coming from Plaintiff's vehicle and was "unsure as to what the noise was, but believed it was the vehicle having mechanical issues." *See* Statement of Alberto Gonzalez-Pinales, pg. 12–13 of District Attorney Report, Ex. 10 to Motion, ECF 45-1.

### D. Procedural History and Plaintiff's Claims

Plaintiff filed this action in state court on January 17, 2018. *See* Compl., Ex. A to Notice of Removal, ECF 1. On February 14, 2018, Defendants removed the action to federal court. *See* Notice of Removal, ECF 1. On July 30, 2018, the Court granted the parties' stipulation permitting Plaintiff to file a first amended complaint ("FAC"), *see* ECF 24, which Plaintiff filed on August 2, 2018, *see* FAC, ECF 27. On October 9, 2018, the Court granted the parties' stipulation permitting Plaintiff to file a second amended complaint ("SAC"), *see* ECF 38, which Plaintiff filed on October 10, 2018, *see* SAC, ECF 39. The SAC is the operative complaint and names four defendants: the CHP, Sergeant Hill, Officer Morasco, and Officer Bleisch. *See generally* SAC. Defendants answered the SAC on October 25, 2018. *See* Answer, ECF 42.

Plaintiff's SAC pleads the following five causes of action:

(1) Violation of Civil Rights secured by the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 (against Officers Morasco and Bleisch);

(2) False Arrest and Imprisonment pursuant to Cal. Gov't Code §§ 815.2(a) & 820.4

1 (against the CHP and Officers Morasco and Bleisch);

2 (3) Battery pursuant to California state law and Cal. Gov't Code § 815.2(a)

3 (against the CHP and Officers Morasco and Bleisch);

4 (4) Violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1

5 (against the CHP and Officers Morasco and Bleisch); and

6 (5) Negligence under California law and Cal. Gov't Code §§ 815.2(a) & 820.4

7 (against all Defendants).

8 *See generally* SAC. The SAC also requests punitive damages. *See id.*

9 Defendants filed their motion for summary judgment on January 24, 2019, seeking

10 judgment in their favor on all claims. *See* Motion, ECF 45. Plaintiff submitted his opposition

11 brief on March 15, 2019, *see* Opp'n, ECF 51, and Defendants submitted their reply brief on March

12 26, 2019, *see* Reply, ECF 52. The Court held a hearing on Defendants' motion for summary

13 judgment on May 2, 2019 ("the Hearing").

14 **II.    EVIDENTIARY OBJECTIONS**

15 Under Federal Rule of Civil Procedure 56(c), a party can object to an opposing party's

16 declarations and evidentiary material if it is not in a form that "would be admissible in evidence."

17 Defendants object to portions of the Declaration of Roger Clark (ECF 51-2) submitted by Plaintiff

18 in opposition to Defendants' motion for summary judgment. *See* Defendants' Objections at 2–3,

19 ECF 52-1. The Court discusses each objection in turn.

20 **1.    Clark Decl. ¶ 9**

21 Defendants object to the portion of Clark Decl. ¶ 9 that states "officers can usually avoid

22 firing their guns" and "[t]he use of deadly force against an unarmed, innocent person like

23 Mr. Acosta is an aberration and almost always avoidable." *See* Defendants' Objections at 2.

24 Defendants argue that this is a generalized statement that lacks foundation. *See id.*

25 <u>Ruling</u>: OVERRULED. The Court finds Mr. Clark qualified to form these opinions based

26 on his twenty-seven years of experience in the law enforcement field and review of CHP

27 procedures.

28

9

### 2. Clark Decl. ¶ 10

Defendants object to the portion of Clark Decl. ¶ 10 that states "the use of deadly force against Mr. Acosta was not objectively reasonable" and that the officers created a "dangerous situation" and "failed to take heed of various clues that indicated that Mr. Acosta was not a threat." *See* Defendants' Objections at 2. Defendants argue that Clark improperly proffers a "legally specialized term," makes an improper legal conclusion, and attempts to testify about the officers' subjective knowledge. *See id.*

Ruling: SUSTAINED IN PART and OVERRULED IN PART. Mr. Clark's statement that the use of deadly force against Plaintiff was not objectively reasonable is an impermissible legal conclusion. *See Hangarter v. Provident Life*, 373 F.3d 998, 1016 (9th Cir. 2014). However, the Court finds Mr. Clark qualified to form the remaining challenged opinions based on his review of the evidence and twenty-seven years of experience in the law enforcement field.

### 3. Clark Decl. ¶ 11

Defendants object to various portions of Clark Decl. ¶ 11. *See* Defendants' Objections at 3. Defendants argue that Clark offers no foundation for the challenged statements and improperly testifies about Sergeant Hill's subjective state of mind. *See id.*

Ruling: SUSTAINED IN PART and OVERRULED IN PART. Mr. Clark's statement that Sergeant Hill had "no necessity . . . to intervene with regard to Mr. Acosta's mechanical problems" lacks foundation. In addition, Mr. Clark's statement that Sergeant Hill's conduct was "reckless[]" is a determination within the province of the trier of fact and therefore improper. *See Cotton v. City of Eureka*, 2011 WL 4047490, at *2 (N.D. Cal. Sept. 8, 2011). However, the Court finds the remaining opinions in this paragraph warranted.

### 4. Clark Decl. ¶ 12

Defendants object to the portion of Clark Decl. ¶ 12 that states it was "reasonably foreseeable" that Defendants' conduct could easily lead to serious injuries or death. *See* Defendants' Objections at 3. Defendants argue this statement is an improper legal conclusion. *Id.*

Ruling: OVERRULED. The Court does not read this statement to be a legal conclusion but instead an opinion that Mr. Clark is qualified to form based on his twenty-seven years of

experience in the law enforcement field and review of CHP procedures and the evidence in this case.

### 5. Clark Decl. ¶ 13

Defendants object to the portion of Clark Decl. ¶ 13 that states "there was no justification for the use of deadly force," the officers' response was not "reasonable," and the officers "violate[d] Mr. Acosta's Fourth Amendment rights."  *See* Defendants' Objections at 3. Defendants argue these statements are improper legal conclusions.  *Id.*

Ruling:  SUSTAINED.  These statements are improper legal conclusions.  *See Hangarter v. Provident Life*, 373 F.3d 998, 1016 (9th Cir. 2014).

### 6. Clark Decl. ¶ 14

Defendants object to the portion of Clark Decl. ¶ 14 that states Officers Morasco and Bleisch "rush[ed] to a determination about what was happening."  *See* Defendants' Objections at 3.  Defendants argue this statement is an improper attempt to testify about the officers' subjective knowledge.  *Id.*

Ruling:  OVERRULED.  The Court does not read this statement as testimony that goes to the officers' subjective knowledge.

### 7. Clark Decl. ¶ 15

Defendants object to the portion of Clark Decl. ¶ 15 that states "[t]here could have been small children in the car for all [the officers] knew" and that the officers' response was "reckless and unreasonable" in nature.  *See* Defendants' Objections at 3.  Defendants argue the former statement is speculative and the latter statement is an improper legal conclusion.  *See id.*

Ruling:  SUSTAINED IN PART and OVERRULED IN PART.  Mr. Clark has foundation for the former statement based on his review of the evidence.  The latter statement is a legal conclusion and therefore improper.

### 8. Clark Decl. ¶ 16

Defendants object to the portion of Clark Decl. ¶ 16 that states the officers "lost their composure and therefore failed to act reasonably and rationally."  *See* Defendants' Objections at 3. Defendants argue that this statement goes to the officers' subjective state of mind and that Mr.

11

Clark's legal conclusion is inadmissible. *See id.*

Ruling: SUSTAINED. Mr. Clark's statement that the officers "lost their composure" is an impermissible opinion of the officers' state of mind, and the remainder of the statement is essentially a legal conclusion and therefore improper.

### 9. Clark Decl. ¶ 17

Defendants object to the portion of Clark Decl. ¶ 17 that states the officers' subjective feelings and beliefs do not render the officers' actions "objectively reasonable." *See* Defendants' Objections at 3. Defendants argue this statement is an improper legal conclusion. *Id.*

Ruling: SUSTAINED. This statement is an improper legal conclusion. *See Hangarter v. Provident Life*, 373 F.3d 998, 1016 (9th Cir. 2014).

## III. LEGAL STANDARD

### A. Summary Judgment

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not

produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995). "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part approach for analyzing qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court has clarified that the sequence of analysis set forth in *Saucier* is not

mandatory and that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009). Thus, in some cases, it may be unnecessary to reach the ultimate constitutional question when officers would be entitled to qualified immunity in any event, a result consistent with longstanding principles of judicial restraint.

The Supreme Court recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Ricard*, 134 S. Ct. 2012, 2023 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.* Finally, a plaintiff bears the burden of showing that the right was clearly established. *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019).

## IV.    DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. Alternatively, Defendants move for partial summary judgment as to each party and claim. *See* Motion at 3. Specifically, Defendants' motion presents the following seven issues: (1) whether Officers Morasco and Bleisch acted reasonably in firing their weapons at Plaintiff; (2) whether the officers are entitled to qualified immunity under prong two of the analysis; (3) whether Plaintiff's Bane

14

Act claim fails because the officers lacked the requisite intent; (4) whether Defendants are entitled to discretionary immunity under Cal. Gov't Code § 820.2; (5) whether Defendants are entitled to immunity under Cal. Gov't Code § 821.6 for their investigatory acts; (6) whether Sergeant Hill's communications to Dispatch are privileged under Cal. Civ. Code § 47; and (7) whether punitive damages are barred. *See* Motion at 3–4.

However, based on Plaintiff's opposition brief and discussion at the Hearing, the issues to be decided have been significantly narrowed. First, Plaintiff has expressly "decided not to pursue his Bane Act claim" (Plaintiff's fourth cause of action). *See* Opp'n at 2. Second, Plaintiff has expressly dropped "his prayer for punitive damages." *See id.* Third, Defendants point out in their reply brief that Plaintiff "offers no substantive opposition to the reasonableness of his brief detention, to the extent he was detained by [Defendants], following the subject incident." *See* Reply at 5. Indeed, at the Hearing, Plaintiff stated that he was no longer putting forth his false arrest/imprisonment claim (Plaintiff's second cause of action) and that he understood the claim would be foreclosed in this action. *See* Hearing Tr. at 5:22–6:4, ECF 57. Accordingly, the Court hereby GRANTS summary judgment for Defendants as to Plaintiff's Bane Act claim, Plaintiff's false arrest/imprisonment claim, and Plaintiff's prayer for punitive damages.

As to the remainder of the issues, for the reasons discussed below, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court first addresses Plaintiff's federal civil rights claim, followed by Plaintiff's remaining state law claims.

### A. Civil Rights Claim (under the Fourth Amendment and 42 U.S.C. § 1983)

Plaintiff alleges that Officers Morasco and Bleisch violated his civil rights secured by the Fourth Amendment and 42 U.S.C. § 1983 in "us[ing] excessive and unreasonable force when they fired numerous shots at [Plaintiff] even though he posed no threat to them." *See* SAC ¶ 10. Although the SAC mentions additional actions taken by the officers, at the Hearing, Plaintiff confirmed that "[t]he firing of the bullets . . . is the illegal use of force and the sole theory upon which we're proceeding at this point under [Plaintiff's civil rights claim]." *See* Hearing Tr. at 7:19–25. Defendants move for summary judgment on Plaintiff's claim for excessive use of force in violation of his civil rights on the grounds that Officers Morasco and Bleisch did not use

objectively unreasonable force in shooting at Plaintiff, and that Officers Morasco and Bleisch are entitled to qualified immunity for their actions. *See* Motion at 1. Plaintiff counters that there are triable issues as to the reasonableness of the shooting and that qualified immunity does not apply. *See* Opp'n at 2. As discussed below, the Court finds that Officers Morasco and Bleisch are entitled to qualified immunity.

### 1. Qualified Immunity Prong One

Under the first prong of qualified immunity, the Court considers whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. However, the Supreme Court has clarified that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 241–42 (2009). Here, consistent with longstanding principles of judicial restraint, the Court finds it unnecessary to reach the ultimate constitutional question as the Court finds that Officers Morasco and Bleisch are entitled to qualified immunity in any event under prong two, as subsequently discussed.

### 2. Qualified Immunity Prong Two

The second prong of the qualified immunity analysis asks whether the constitutional right in question "was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). The question is whether at the time of the shooting Officer Morasco and Bleisch's actions violated clearly established law.

Turning to the parties' respective definitions of the right in question, Defendants argue that Officers Morasco and Bleisch are entitled to qualified immunity because it was not clearly established that a constitutional violation arises when an officer uses "deadly force to defend against a perceived threat when the officer is responding to a report of possible gunfire coming from a vehicle, and then is met immediately upon arriving to the scene by the sound of gunfire, even if the sound is caused by the vehicle backfiring." *See* Motion at 16. On the other hand, Plaintiff frames the question as whether "it was clearly established in the law that it is a Fourth Amendment violation for officers to fire their guns into a car without having seen a gun, without

knowing who was in the car and without having given the occupant(s) a warning or the opportunity to cooperate, [i.e. to confront Plaintiff without proper planning after hearing sounds the officers thought were gunshots]." *See* Opp'n at 2, 8. The Court finds each party's definition of the "clearly established" right is properly "particularized" to the facts of the instant action. *See White*, 137 S. Ct. at 552.

On summary judgment, the right in question under the second prong of qualified immunity is framed by the plaintiff's version of the facts, not the defendant's. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (explaining that "defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right"). Here, however, in their respective definitions of the "clearly established" right, the parties do not dispute what occurred leading up to the shooting. Plaintiff acknowledges that Officers Morasco and Bleisch were informed that "gunshots 'may' have been emanating from the vicinity of [Plaintiff's] car before they arrived on scene." *See* Opp'n at 8; *see also* Dispatch Transcript at 2:18–20 (Sergeant Hill reporting to the officers that "something just exploded from that car or it could've been shots fired"). Plaintiff further acknowledges that in the moments before opening fire, Officers Morasco and Bleisch "hear[d] two more sounds that they thought were gunshots." *See* Opp'n at 8; *see also* Morasco MVARS Video at 00:54–00:59; Morasco MVARS Transcript at 2:7–9 (Officer Morasco exclaiming "Shots fired!" after a loud sound emanates from Plaintiff's vehicle). In addition, Plaintiff stated that "[my] car backfiring sounded like gunshots," *see* Acosta Depo. at 47:6–9, and another civilian witness near the scene reported hearing "what she thought was a gunshot." *See* Statement of Sammanika Martica, pg. 11–12 of District Attorney Report. While a separate witness stated that he heard a "loud bang" coming from Plaintiff's vehicle and was "unsure as to what the noise was, but believed it was the vehicle having mechanical issues," *see* Statement of Alberto Gonzalez-Pinales, pg. 12–13 of District Attorney Report, there is no dispute that multiple officers and multiple civilian witnesses mistook the backfires for gunshots.

As discussed below, under neither definition of the "clearly established" right does Plaintiff point to any case in his favor even remotely close to these facts. As such, Officers

United States District Court
Northern District of California

Morasco and Bleisch are entitled to qualified immunity.

Qualified immunity is a question of law, not of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The doctrine shields a government official performing discretionary functions from liability for civil damages if the officer's conduct does not violate a "clearly established statutory or constitutional right of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018); *White v. Pauly*, 137 S.Ct. 548, 551 (2017). While the doctrine "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S.Ct. at 551; *Kisela*, 138 S.Ct. at 1152.

Defendants argue that Officers Morasco and Bleich "did not violate any clearly established law" by employing deadly force in firing on Plaintiff's vehicle under the circumstances of this action. *See* Motion at 16–17. The Court agrees. Plaintiff relies on *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386 (1989); *Acosta v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996); *A.K.H. by and through Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016); and *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017). *See* Opp'n at 6–9. However, all of these cases are inapposite and do not support Plaintiff's position. Put differently, none of Plaintiff's cases requires an officer to "make a plan" while under the belief that she is facing gunfire. And, in any event, the Court notes that the undisputed facts show that Officers Morasco and Bleisch did make a plan (to "back up") after hearing the first "shot" and then changed their strategy after the second "shot" from Plaintiff's vehicle. The Court discusses the cases relied on by Plaintiff in turn.

First, the Supreme Court has expressly stated that *Garner* and *Graham* cannot be used to show clearly established law except in "an obvious case" because *Garner* and *Graham* "lay out excessive-force principles at only a general level." *See White v. Pauly*, 137 S.Ct. 548, 552 (2017) (internal quotations and citations omitted). The instant action is far from "an obvious case" where *Graham* and *Garner* provide a basis for decision; thus, these two cases do not support Plaintiff.

Second, *Acosta* is inapposite. In *Acosta*, a San Francisco police officer who was off-duty and in plainclothes was standing in front of his car when he heard a woman scream and saw two

18

young men running with what the officer believed to be a purse. *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1144 (9th Cir. 1996). The officer drew his gun and chased the two men around the block. *Id.* After the two men entered a waiting car, the officer fired two shots into the car, one of which killed the driver. *Id.* After the jury found that the officer violated the driver's constitutional rights by using excessive force against him, the district court granted the officer's motion for judgment as a matter of law under qualified immunity. *See id.* at 1145. The Ninth Circuit reversed, holding that the district court was bound by the jury's factual finding that the officer did not face a threat of serious harm at the time he fired his gun, so was not entitled to qualified immunity. *See id.* at 1148. The Ninth Circuit noted that *Acosta* concerned "the law governing 'shooting to kill' a fleeing suspect." *See id.* Here, by contrast, the facts do not involve a suspected theft or a "fleeing suspect." Moreover, the officer in *Acosta* did not believe that he had been fired upon and therefore was not faced with "making a plan" in response to perceived gunfire. Accordingly, *Acosta* did not place the statutory or constitutional question confronted by Officers Morasco and Bleisch in the instant action "beyond debate." *White*, 137 S.Ct. at 551.

Third, *A.K.H.* is likewise dissimilar to the facts of the instant action. In *A.K.H.*, a police officer in Tustin, California, fatally stop Benny Herrera, who was on foot, during an attempted investigatory stop. *A.K.H. by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1008 (9th Cir. 2016). The officer was investigating a dispatch report of domestic violence and that Herrera had taken a cell phone from his ex-girlfriend, who had called 911 to report Herrera. *See id.* The officer, who was in his patrol vehicle, encountered Herrera, who was on foot in the middle of the roadway, moving in the direction of traffic. *See id.* One of Herrera's hands was in his pocket. *Id.* The officer commanded Herrera to take his hand out of his pocket, and less than a second later, just as Herrera's hand came out of his pocket, the officer shot Herrera twice, killing him. *See id.* The district court denied the officer's motion for summary judgment based on qualified immunity, and the Ninth Circuit affirmed on interlocutory appeal, concluding that viewing the evidence in the light most favorable to the plaintiffs, the officer "violated clearly established Fourth Amendment law when he shot and killed Herrera." *See id.* at 1009–10, 1013–14. The Ninth Circuit noted that "[t]he dispatcher expressly told the officers that Herrera was not known to carry

19

weapons" and that the officer "had no articulable basis to think [Herrera] was armed." *See id.* at 1013 (internal quotations and citations omitted). These facts are in sharp contrast to the instant action where the backfires from Plaintiff's vehicle sounded like gunshots to Officers Morasco and Bleisch, Plaintiff, and at least one other witness. Furthermore, *A.K.H.* did not involve "knowing who is in the car" or "proper planning," both of which are elements of Plaintiff's definition of the right in question here, *see* Opp'n at 2, 8. *A.K.H.* is simply inapposite.

Fourth, *Estate of Lopez* does not support Plaintiff. The facts of *Estate of Lopez* are utterly tragic. A county deputy fatally shot thirteen-year-old Andy Lopez after the deputy observed Andy walking along a sidewalk and "noticed Andy's gun, which [the deputy] believed to be an AK-47," although it was in fact a toy. *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998, 1002 (9th Cir. 2017). The deputy instructed Andy to "Drop the gun!" but Andy did not drop the gun. *See id.* at 1002–03. After a few seconds Andy "began to rotate his body clockwise" and the deputy opened fired moments later, killing Andy. *See id.* 1003. The district court denied the deputy's motion for summary judgment based on qualified immunity, and the Ninth Circuit affirmed on interlocutory appeal. *See id.* at 1022. The tragic facts in *Estate of Lopez* are dissimilar to the facts of the instant action—for example, *Estate of Lopez* did not involve "knowing who is in the car" or an officer's decision to fire "without having seen a gun," *see* Opp'n at 2, 8. Accordingly, *Estate of Lopez* is inapposite.

Having considered Plaintiff's submissions, the Court finds that Plaintiff has failed to meet his burden of showing that the right in question was clearly established at the time of the shooting. *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019). In fact, as pointed out by Defendants, in 2015, the Eighth Circuit held that two Kansas City police officers were entitled to qualified immunity under facts analogous to the facts of the instant action. *See Ransom v. Grisafe*, 790 F.3d 804, 812 (8th Cir. 2015). In *Ransom*, it was undisputed that the two officers knew a 911 call had reported shots fired, found Ransom's van where the caller said it would be (corroborating the call), heard the van backfire in a manner that both sides agreed could have been mistaken for a gunshot, perceived Ransom to disregard their orders, and then opened fire. *See id.* at 811. The Eighth Circuit concluded that under these facts, "the officers' fear of harm was reasonable, and the

potential seizure from their gunshots did not violate Ransom's Fourth Amendment rights." *See id.* Here, Officers Morasco and Bleisch heard a report of possible "shots fired" or an "explosion" originating from a vehicle, approached the vehicle that was pulled over to the side of the road with two rear lights visibly blinking, heard a loud sound and saw a puff of smoke emanating from the vehicle that the officers (and multiple others) mistook for gunfire, initially held fire and backed up, then upon hearing a second loud sound and seeing a second puff of smoke emanating from the vehicle about 10 seconds later that the officers (and multiple others) again mistook for gunfire, opened fire on the vehicle, in which Plaintiff was located. An officer familiar with the holding in *Ransom* would conclude the conduct here was proper; thus, the statutory or constitutional question faced was open to debate. *See Reichle v. Howards*, 566 U.S. 658, 669–70 (2012).

In sum, in the context of prong two of qualified immunity and the facts of the instant action, Eighth Circuit case law appears to favor Defendants and U.S. Supreme Court and Ninth Circuit case law does not address the particular circumstances in this case. Accordingly, qualified immunity applies because at the time of the shooting, the law did not clearly establish that Officer Morasco and Bleisch's conduct-at-issue would violate a plaintiff's federal civil rights.

### 3. Conclusion

In conclusion, the Court finds that Officers Morasco and Bleisch are entitled to qualified immunity as to Plaintiff's federal civil rights claim under prong two of the qualified immunity analysis. Accordingly, the Court hereby GRANTS Defendants' motion for summary judgment as to Plaintiff's federal civil rights claim (Count I of the SAC).

### B. Remaining State Law Claims

Plaintiff's two remaining state law claims are for battery (against the CHP and Officers Morasco and Bleisch) and for negligence (against all Defendants). With respect to battery, Plaintiff asserts that Officers Morasco and Bleisch used unreasonable and excessive force upon Plaintiff by intentionally shooting numerous rounds at him and that the officers failed to take reasonable steps to assess the situation and determine whether any threat existed. *See* SAC ¶ 20. With respect to negligence, Plaintiff asserts that Sergeant Hill and Officers Morasco and Bleisch breached their duty to not expose members of the public to unreasonable risks of harm and to act

reasonably in making strategic decisions preceding the use of deadly force. *See* SAC ¶ 30.
Plaintiff further alleges that Sergeant Hill and Officers Morasco and Bleisch were acting within
the scope of their duties and that the CHP is vicariously liable for the alleged wrongful acts. *See*
SAC ¶¶ 20, 31.

The relevant issues to be decided are (1) whether Officers Morasco and Bleisch acted
reasonably under state law in firing their weapons at Plaintiff; (2) whether Defendants are entitled
to discretionary immunity under Cal. Gov't Code § 820.2; (3) whether Defendants are entitled to
immunity under Cal. Gov't Code § 821.6 for their investigatory acts; and (4) whether Sergeant
Hill's communications to Dispatch are privileged under Cal. Civ. Code § 47. *See* Motion at 3–4.
The Court addresses each issue in turn. As discussed below, the Court DENIES Defendants'
motion as to all four of these issues.

### 1. Whether Officers Morasco and Bleisch Acted Reasonably under State Law

Defendants argue that Plaintiff's state law claims fail because "Officer Morasco and
Officer Bleisch acted objectively reasonably under the circumstances." *See* Motion at 8–9.
Plaintiff counters that there are triable issues as to the objective reasonableness of the officers'
actions. *See* Opp'n at 3. For the reasons discussed below, in the context of Plaintiff's state law
claims, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether
Officer Morasco and Bleisch's conduct was objectively reasonable under the circumstances.

In order to establish liability for negligence, a plaintiff must show that the defendant had a
duty to use due care, breach of that duty, and resulting injury. *Hayes v. Cnty. of San Diego*, 57
Cal. 4th 622, 629 (2013) (citing Cal. Gov't Code § 820). "[P]eace officers have a duty to act
reasonably when using deadly force." *Id.* That duty "extends to the totality of the circumstances
surrounding the shooting, including the officers' preshooting conduct." *Id.* at 638. State
negligence law, which considers *all* of the circumstances surrounding any use of deadly force, thus
is broader than federal Fourth Amendment law, which focuses narrowly on the moment when
deadly force is used. *Id.* at 639. Under these standards, "[l]aw enforcement personnel's tactical
conduct and decisions preceding the use of deadly force are relevant considerations . . . in
determining whether the use of deadly force gives rise to negligence liability." *Id.* Similarly, in

order to prevail on a claim of battery against a police officer, the plaintiff bears the burden of proving the officer used unreasonable force. *See Edson v. City of Anaheim* 63 Cal. App. 4th 1269, 1272 (1998). Put differently, "[a] peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force." *See id.* at 1273 (internal quotation and citation omitted).

### a. Defendants' Evidence

As the moving parties, Defendants have the initial burden to produce evidence negating an essential element of Plaintiff's state law claims or to show that Plaintiff does not have enough evidence of an essential element of the claims to carry his ultimate burden of persuasion at trial. *See Nissan*, 210 F.3d at 1102. Under the standards articulated above, Defendants may satisfy this burden by showing that the officers acted reasonably in using deadly force against Plaintiff.

Defendants submit the declarations of Sergeant Hill, Officer Morasco, and Officer Bleisch, all of who maintain that the loud sounds coming from Plaintiff's vehicle were similar to that of a gun. *See* Hill Decl. ¶ 3; Morasco Decl. ¶ 8; Bleisch Decl. ¶ 7. Defendants also submit testimony from Plaintiff and another witness that the backfires coming from Plaintiff's vehicle sounded like gunfire. *See* Acosta Depo. at 47:6–13; Statement of Sammanika Martica, pg. 11–12 of District Attorney Report. Officers Morasco and Bleisch maintain that they followed the CHP's "high-risk procedures" leading up to the shooting, that they could not see inside Plaintiff's vehicle, and that after hearing the second loud sound they feared for their lives. *See* Morasco Decl. ¶ 4, 7–12; Bleisch Decl. ¶ 7–10. In addition, Defendants submit an audio recording of the dispatch clip and a transcript of the first two minutes (the relevant portion), *see* Dispatch Transcript. Defendants further submit the MVARS video recording from Officer Morasco's patrol vehicle and the accompanying transcript, *see* Morasco MVARS Transcript. The Court has recounted the audio clip and video recording in detail in Section I *supra* and finds that it corroborates much of Defendants' account of the events. Accordingly, the evidence submitted by Defendants is sufficient to meet Defendants' initial burden, as it indicates that the officers' use of deadly force was consistent with police standards and state law.

### b. Plaintiff's Evidence

Plaintiff controverts Defendants' evidence with the declaration of their police procedures expert, Roger Clark. *See* Opp'n at 4 –7; *see generally* Clark Decl., ECF 51-2. Clark opines that Officers Morasco and Bleisch failed to conform to police practices and standards in a number of ways, including escalating the situation, failing to delineate the role that each officer would undertake and planning for various scenarios that might develop, and failing to properly account for the fact that Plaintiff's vehicle was pulled over to the side of the road with its hazard lights on. Clark Decl. ¶¶ 10, 12, 13. Clark further opines that the officers should have used their PA system to address Mr. Acosta and give him an opportunity to cooperate. *See id.* ¶ 14. Clark notes that Mr. Acosta took no action that could reasonably be seen as threatening towards the officers and concludes that "[i]t was the officers who created a dangerous situation by confronting [Mr.] Acosta." *Id.* ¶ 10. In addition, Plaintiff submits evidence from one civilian witness who heard a "loud bang" coming from Plaintiff's vehicle and was "unsure as to what the noise was, but believed it was the vehicle having mechanical issues." *See* Statement of Alberto Gonzalez-Pinales, pg. 12–13 of District Attorney Report.

Accordingly, the Court finds disputed facts as to essential elements of Plaintiff's remaining state law claims. The Court therefore DENIES Defendants' motion for summary judgment that Officers Morasco and Bleisch acted reasonably in the context of Plaintiff's state law claims.

### 2. Whether Discretionary Immunity under Cal. Gov't Code § 820.2 applies

Defendants argue that they are immune from Plaintiff's state law battery and negligence claims under Cal. Gov't Code § 820.2. *See* Motion at 20. This section provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Plaintiff responds that discretionary immunity does not apply to the instant action because the officers were not making a "policy decision." *See* Opp'n at 10 (citing *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1083–84 (9th Cir. 2018).

In *Mendez*, the Ninth Circuit explained that "the California Supreme Court has held that

[§ 820.2] immunity applies only to policy decisions, not to operational decisions like the [officers'] decision to enter the [plaintiff's] residence." 897 F.3d at 1084 (citing *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). Moreover, this "discretionary immunity" does not apply to excessive force claims. *See Scruggs v. Haynes*, 252 Cal. App. 2d 256, 267–68 (1967); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007). Indeed, at the Hearing, Defendants acknowledged this point. *See* Hearing Tr. at 18:25–19:3. Here, Plaintiff's battery and negligence claims allege that "unreasonable and excessive force" was employed against Plaintiff. *See* SAC ¶¶ 20, 30. Thus, the Court finds that discretionary immunity under Cal. Gov't Code § 820.2 does not apply. Accordingly, Defendants' motion for summary judgment that Defendants are entitled to discretionary immunity under Cal. Gov't Code § 820.2 is DENIED.

### 3. Whether Immunity under Cal. Gov't Code § 821.6 for Investigatory Acts applies

Defendants also argue that they are immune from Plaintiff's state law battery and negligence claims under Cal. Gov't Code § 821.6. *See* Motion at 22. This section provides that "[a] public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. Plaintiff counters that § 821.6 is "clearly not applicable" to "[the instant] police shooting case." *See* Opp'n at 13. The Court agrees with Plaintiff. The California Supreme Court "has not extended § 821.6 immunity to actions outside of malicious prosecution." *See Sharp v. County of Orange*, 871 F.3d 901, 920–21 (9th Cir. 2017) (discussing California law). Thus, as in *Sharp*, "this immunity does not apply here." *See id.* at 921. Accordingly, Defendants' motion for summary judgment that Defendants are entitled to immunity under Cal. Gov't Code § 821.6 is DENIED.

### 4. Whether Sergeant Hill's Communications are Privileged under Cal. Civ. Code § 47

Defendants next argue that Sergeant Hill, who observed and reported the sound of possible gunfire coming from Plaintiff's vehicle, cannot be sued for negligence because his statement was a privileged communication under Cal. Civ. Code § 47. *See* Motion at 23. This section provides in part that "[a] privileged publication or broadcast is one made: (a) In the proper discharge of an

official duty.  (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . . (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ."  Cal. Civ. Code § 47.

Defendants contend that as applied to reports made by police officers, "the Section 47 privilege is absolute."  *See* Motion at 24.  Plaintiff responds that "Defendants have provided no authority for the proposition that section 47 applies to communications made *by* and *between* police officers."  *See* Opp'n at 15 (emphasis in original).  The Court agrees with Plaintiff. Defendants have failed to provide a basis for the proposition that Sergeant Hill's communications to Dispatch constitute a "police report" of the traditional type that would be covered by section 47. *Cf. Johnson v. Symantec Corp.*, 58 F. Supp. 2d 1107, 1108 (N.D. Cal. 1999) (applying section 47 in the context of statements made by civilians to law enforcement officers and contained within a police report).  In fact, in Defendants' reply brief, Defendants appear to advance a separate argument—the absence of detrimental reliance—rather than continuing to argue privileged communication.  *See* Reply at 9–10, ECF 52.

In sum, Defendants' motion for summary judgment that Sergeant Hill's communications are privileged under Cal. Civ. Code § 47 is DENIED.

### 5. Conclusion as to Plaintiff's Remaining State Law Claims

In conclusion, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether Officers Morasco and Bleisch acted reasonably under California negligence law and California battery law, and that the state law immunities and state law privilege raised by Defendants do not apply.

//

//

//

//

//

//

//

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment as to Plaintiff's false arrest/imprisonment claim (Count II of the SAC) is **GRANTED**.

2. Defendants' motion for summary judgment as to Plaintiff's Bane Act claim (Count IV of the SAC) is **GRANTED**.

3. Defendants' motion for summary judgment that Plaintiff is barred from collecting punitive damages is **GRANTED**.

4. Defendants' motion for summary judgment as to Plaintiff's federal civil rights claim (Count I of the SAC) is **GRANTED** based on qualified immunity prong two.

5. Defendants' motion for summary judgment that Officers Morasco and Bleisch acted reasonably in the context of Plaintiff's remaining state law claims is **DENIED**.

6. Defendants' motion for summary judgment that Defendants are entitled to discretionary immunity under Cal. Gov't Code § 820.2 is **DENIED**.

7. Defendants' motion for summary judgment that Defendants are entitled to immunity under Cal. Gov't Code § 821.6 is **DENIED**.

8. Defendants' motion for summary judgment that Sergeant Hill's communications are privileged under Cal. Civ. Code § 47 is **DENIED**.


**IT IS SO ORDERED.**

Dated: June 24, 2019

_____
BETH LABSON FREEMAN
United States District Judge